IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF ALABAMA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 2:19-cv-69-ECM |
| ) | [WO] |
| JOHN HAROLD MERRILL, ) | |
| Secretary of State for the State of Alabama, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The Libertarian Party of Alabama ("Libertarian Party") filed a this action challenging the State of Alabama's policy of providing some political parties a free copy of the voter registration list while charging other parties a substantial fee. The Libertarian Party argues that this policy violates its Equal Protection Rights under the Fourteenth Amendment and the Free Speech Clause of the First Amendment.

This case is before the Court on Defendant's Motion to Dismiss for failure to state a claim. (Doc. 5). For the reasons stated below, this motion is due to be denied.

**I.   BACKGROUND**[1]

---

[1] This recitation of the facts is based upon the Plaintiff's Complaint, which is presumed to be true for the purposes of this motion. In support of his Motion to Dismiss, the Defendant submitted the Declaration of Clay S. Helms, Director of Elections and Supervisor of Voter Registration for the Alabama Secretary of State. Through this Declaration, the Defendant presents evidence and arguments regarding the justification for the policy in question. Because this matter is before the Court on a Rule 12(b)(6) Motion to Dismiss, the Court declines to consider the declaration. *See Jones v. Auto Ins. Co. of Hartford, Conn.*, 917 F.2d 1528–32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court [when presented with a motion to dismiss]."). The Court further declines to convert the Defendant's Motion to Dismiss to a Motion for Summary Judgment.

Pursuant to state law, Alabama maintains a computerized voter registration list that contains the name, address, voting location, and voting history of every legally registered voter in the state. ALA. CODE § 17-4-33. Following every state and county election, each political party that satisfied the ballot access requirements is automatically provided a copy of the voter list free of charge and may later receive two additional electronic copies in the next calendar year. *Id*.

A party may attain ballot access by either (1) performance or (2) petition. In the case of performance, a party may qualify if it achieved at least 20% of the entire vote cast for a state officer in the prior General Election. ALA. CODE § 17-13-40. This qualification is only good for the next election, so a party must repeatedly get 20% of the vote for at least one state officer to qualify under § 17-13-40 for the next cycle. If a party does not secure 20% of the vote for a state official, it must file a petition by the date of the first primary election for the next election with signatures of at least 3% of the qualified voters who cast a ballot for the governor in the last election. ALA. CODE § 17-6-22(a).

In 2000, the Libertarian Party qualified for ballot access after it collected enough signatures to run a slate of candidates, with one statewide candidate receiving over 20% of the vote. By garnering 20% of the vote in a state-wide election, the Libertarian Party gained ballot access for the next election without a petition. The Libertarian Party then lost ballot access in 2002. The Libertarian Party continued to run candidates as independents through the less demanding process that resulted in the candidates not being identified as belonging to the Libertarian Party on the ballot.

Under Alabama law, the Libertarian Party does not currently qualify for ballot access and thus, is not entitled a free copy of the voter registration list. *See* ALA. CODE § 17-4-33(a)(10) (states that a free list is available to "each political party that satisfied the ballot access requirements for that election"); ALA. CODE § 17-4-38 (providing for the "reasonable" and "uniform" charge for the production of voter lists to applicants not otherwise entitled to it without charge). Currently, pursuant to § 17-4-33(a)(10), only the Democratic and Republican parties receive a free copy of the voter list while political parties must pay approximately $34,000. The Libertarian Party argues that this cost is prohibitively expensive for minor parties seeking the same list provided at no cost to major parties. The Libertarian Party explains that this list is important because it allows a political party to know the number of voters in a location so that the party can prioritize its efforts to gain support, it lets the party reach out to registered voters by name, at their home, to solicit support, and it assists parties in seeking out politically like-minded voters to obtain ballot access signatures and win elections for party candidates. The Libertarian Party is particularly interested in this list in order to begin collecting signatures to gain ballot access for the 2020 election. (Doc. 1 at 6).

Due to the State's policy that has the effect of providing the Democratic and Republican parties with the voter list free of charge, while charging the Libertarian Party approximately $34,000 for the same list, the Libertarian Party brings a § 1983 claim for violation of the Libertarian Party's First Amendment Rights and its Equal Protection Rights under the Fourteenth Amendment. Specifically, the Libertarian Party brings a facial and

as applied challenge to the constitutionality of Alabama Code § 17-4-33(a)(10) and § 17-4-38.

## II.	LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III.  DISCUSSION

### A. The Libertarian Party pleads sufficient facts to defeat the Defendant's Motion to Dismiss.

The Libertarian Party argues that the Alabama law penalizes minor parties by charging them a steep fee while providing major parties the same list for free, violating the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  The Defendant responds that any party that qualifies for state-wide ballot access may receive the list for free.  Thus, the Defendant denies that the state is treating political parties differently based their status as major or minor parties, but instead argues that ballot access is the determining factor, one that applies with equal force to political parties and to the general public.

Other courts that have addressed similar challenges have found cognizable claims. *See Socialist Workers Party v. Rockefeller,* 314 F. Supp. 984 (S.D.N.Y.), *judgment aff'd,* 400 U.S. 806 (1970) (holding that a New York law that provided for free copies for major political parties and charged minor parties violated Equal Protection); *Schultz v. Williams*, 44 F.3d 48, 60 (2nd Cir. 1994) (affirmed the district court's decision that a New York law that provided a free voter registration list only to political parties that achieved over 50,00 votes in the prior gubernatorial election was unconstitutional); *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) (reversing the district court's dismissal of the Plaintiff's complaint and remanding the case to consider the claims on their merits under the *Anderson-Burdick* test). The Court determines that the Libertarian Party likewise sufficiently states a claim against the Defendant.

### B. In order for the Court to conduct the appropriate legal test, it must consider evidence.

The Defendant argues that in evaluating the constitutionality of the challenged law, the Court should apply the *Anderson-Burdick* test. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). Pursuant to that test, courts "weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to the plaintiffs' rights." *Democratic Exec.*, 915 F.3d at 1318. Regulations that impose severe burdens on a plaintiff's rights "must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997). Regulations that impose lesser burdens trigger "less exacting review" and a state's "important regulatory interests" will usually be enough to justify "reasonable, nondiscriminatory restrictions." *Id.* (citing *Burdick*, 504 U.S. at 434). The Supreme Court also urged that "no bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons*, 520 U.S. at 359; *see also Storer v. Brown*, 415 U.S. 724, 730 (1974) ("no litmus-paper test . . . separate[es] those restrictions that are valid from those that are invidious . . .The rule is not self-executing and is no substitute for the hard judgments that must be made").

The Defendant points to the Supreme Court's analysis in *Timmons* to argue that this Court should similarly evaluate the burden here. In *Timmons*, the Supreme Court held that

Minnesota's ban on multiple-party candidacies for elected office did not violate the First and Fourteenth Amendments. *Timmons*, 520 U.S. 351 (1997). There, the state banned the practice of one candidate appearing on the ballot as the candidate of more than one party, which was referred to as a "fusion" candidacy. *Id*. at 353–354. The New Party filed suit arguing that the antifusion law violated the party's associational rights under the First and Fourteenth Amendments. *Id*. at 354. The New Party continued that the ban stripped the party of an important tool in developing consensus alliances and broadening its base of support. *Id*. at 360. It claimed the burden was severe because party members would be forced to decide between voting for a candidate with no chance of winning; voting for major party candidates; or voting for no candidate at all. *Id*.

The Court agreed with the New Party that the ban would prevent the party from using the ballot to communicate to the public that it supported a candidate. *Id* at 362. The Court held, however that it was "unpersuaded" "by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." *Id.* at 363. The Court reasoned that the New Party could still use the ballot to communicate its support for a candidate if the candidate was not already another party's candidate. Moreover, the Court agreed that the state had an interest in protecting the integrity and efficiency of its election process and the antifusion rule prevented transforming the ballot's purpose as "a means of choosing candidates to a billboard for political advertising." *Id*. at 365. Accordingly, the Court held that there were no First or Fourteenth Amendment violations.

7

The Defendant also points to *Stein*, where the Eleventh Circuit affirmed the district court's decision that Alabama's ballot access rules were constitutional. *Stein v. Alabama Sec'y of State*, 774 F.3d 689 (11th Cir. 2014). There, several political parties and candidates sued, alleging that Alabama's ballot access law discriminated against presidential candidates of unrecognized parties by imposing an early March deadline to appear on the ballot with their party label while permitting independent candidates the opportunity to meet a later deadline with less onerous requirements. *Id*. at 693. Minor political parties were required to gather signatures of three percent of qualified voters (approximately 45,000 signatures) who cast a ballot for governor in the previous election by early March. *Id.* Independent candidates could appear on the ballot by obtaining 5,000 signatures prior to September but did not have a party label by their name even if they were associated with a party. *Id*. There, the court engaged in an extensive review of the record for evidence that a reasonable factfinder could believe that a reasonably diligent political party could not have submitted its signatures by the March deadline. *Id*. at 697. The court ultimately found that the law did not severely burden the plaintiffs' rights and that the state had a rational interest providing a fair playing field for political candidates and establishing a deadline early enough to verify the signatures on ballot-access petitions. *Id*. at 701.

Notably, *Stein* and *Timmons* involved determinations made on motions for summary judgment. There, the parties had the opportunity to conduct discovery and provide evidence regarding the various burdens and benefits of the regulations at issue. In *Stein*, the court engaged in an extensive review of the record to determine whether the restriction was severely burdensome to the plaintiffs' rights and whether the state met its burden.

8

Here, the parties are only at the motion to dismiss stage, and the only issue before the Court is whether the Plaintiff presents a plausible claim for relief. The Court is not in a position to weigh the relative benefits and burdens of the state law until the parties have had an opportunity to conduct discovery and fully develop the record. Indeed, the Defendant relies heavily of the Declaration submitted in support of his Motion to Dismiss. Such reliance on extraneous evidence at this early stage in litigation underscores the very reason dismissal is not warranted.

## IV. CONCLUSION

For the reasons stated above, it is ORDERED that the Defendant's Motion to Dismiss (Doc. 5) is DENIED.

DONE this 28th day of August, 2019.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE