IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF ALABAMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:19-cv-69-ECM |
| | ) | [WO] |
| JOHN HAROLD MERRILL, | ) | |
| Secretary of State for the State of Alabama, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on objections to the expert reports of William Redpath and Richard Winger (doc. 18), a motion for summary judgment (doc. 29), a *Daubert* motion to exclude the testimony of William Redpath (doc. 31), and a *Daubert* motion to exclude the testimony of Richard Winger (doc. 32), all filed by Defendant John Merrill, Secretary of State for the State of Alabama ("the Secretary").

The Libertarian Party of Alabama ("the Libertarian Party") filed this action challenging the State of Alabama's law pursuant to which some political parties obtain a free copy of the Alabama voter registration list while other parties are charged a fee per voter record. The Libertarian Party argues that this law violates its right to equal protection under the Fourteenth Amendment and its free speech rights under the First Amendment of the United States Constitution.[1]

---

[1] At various points in its opposition to summary judgment, *see e.g.* (doc. 38 at 5), the Libertarian Party urges this Court to deny the Secretary's motion and to grant summary judgment on behalf of the Libertarian Party pursuant to Rule 56(f)(1) of the *Federal Rules of Civil Procedure*. This

The Secretary has objected to and moved to exclude the expert testimony offered by the Libertarian Party in opposition to the motion for summary judgment.

Upon consideration of all of the submissions of the parties, and for reasons to be discussed, the Secretary's motion for summary judgment is due to be GRANTED, the objections are due to be OVERRULED as moot, and the motions to exclude are due to be DENIED as moot.[2]

## I.  JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

## II.       SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV.P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l*

---

request is not a properly filed cross-motion for summary judgment and the Court does not find warranted a *sua sponte* grant of summary judgment in the Plaintiff's favor. *See Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003).

[2]  In response to the motion to exclude the testimony of  William Redpath, the Libertarian Party states that it withdraws the designation of Redpath as an expert and offers his declaration simply as lay opinion. (Doc. 39 at 1).  Therefore, the motion to exclude his testimony as expert testimony is due to be DENIED as moot and the objection to his expert report is due to be OVERRULED as moot.  With regard to the objections to the report of Richard Winger and the motion to exclude Richard Winger's testimony, because, as will be discussed below, the Court finds summary judgment is due to be GRANTED even considering this evidence, the objection is due to be OVERRULED as moot and the motion DENIED as moot.

*Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).   However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).   If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists.  *Id.* at 1311–12.

## III.   FACTS

The facts, viewed in a light most favorable to the non-movant, are as follows:

Pursuant to state law, Alabama maintains a computerized voter registration list that contains the name, address, voting location, and voting history of every legally registered voter in the state.  ALA. CODE § 17-4-33.

Alabama Code section 17-4-33(10) provides

> Following each state and county election, the Secretary of State shall provide one electronic copy of the computerized voter list free of charge to each political party that satisfied the ballot access requirements for that election. The electronic copy of

> the computerized voter list shall be provided within 30 days of the certification of the election or upon the completion of the election vote history update following the election, whichever comes first. In addition, upon written request from the chair of a political party, the Secretary of State shall furnish up to two additional electronic copies of the computerized voter file during each calendar year to each political party that satisfied the ballot access requirements during the last statewide election held prior to that calendar year. The electronic copies provided pursuant to this section shall contain the full, editable data as it exists in the computerized voter list maintained by the Secretary of State.

ALA. CODE § 17-4-33 (10).

A political party may attain ballot access by either (1) performance or (2) petition. A party may qualify if it achieved at least 20% of the entire vote cast for a state officer in the prior General Election. ALA. CODE § 17-13-40. This qualification is only good for the next election, so a party must repeatedly get 20% of the vote for at least one state officer to qualify under § 17-13-40 for the next cycle. Or, if a party does not secure 20% of the vote for a state official, it can gain ballot access by filing a petition by the date of the first primary election for the next election with signatures of at least 3% of the qualified voters who cast a ballot for the governor in the last election. ALA. CODE § 17-6-22(a). A party which qualifies for ballot access under either method can receive the voter registration list without cost. ALA. CODE § 17-4-33 (10).

Entities which do not qualify for a free voter registration list can purchase the Alabama voter registration list by paying $.01 per voter record, which in 2020 means a cost of $35,912.76 for the records of all active and inactive registered voters in Alabama. (Doc. 28-3 ¶¶ 9 & 38).

In 2000, the Libertarian Party achieved statewide ballot access and fielded candidates in the 2002 election. (Doc. 28-1 at 26). It is undisputed that the Libertarian Party gained ballot access for the 2002 election because one candidate received more than 20% of the vote in a statewide race. (Doc. 1 ¶3). The Libertarian Party candidates won an average of 2.3 percent of the vote for statewide offices in 2002. (Doc. 28-1 at 26). The Libertarian Party lost statewide ballot access in 2002 and, therefore, no longer qualified for a free voter registration list. Currently, the Libertarian Party does not qualify for statewide ballot access and is not entitled a free copy of the statewide voter registration list. The Libertarian Party provides expert and lay opinion evidence that voter registration lists are important to it in the ballot access petitioning process, the education and advocacy process, and for campaigning and getting votes. (Doc. 38-5 & 38-6).[3]

The Libertarian Party also has qualified to receive voter registration lists for local races. In 2019, the Libertarian Party was provided the copy of voter registration lists based on the ballot access of Libertarian Party candidates in 2018, including Elijah Boyd, Alabama House District 10 (doc. 28-3 ¶31); Matt Shelby, Alabama House District 96 (doc. 28-3 ¶31); Frank Dillman, Macon County Commission, District 4 (doc. 28-3 ¶32); and Michael Reeves, Baldwin County Board of Education, District 2 (doc. 28-3 ¶32). Other minor parties also have qualified for ballot access, including the Independence Party which qualified a candidate for the Alabama House of Representatives in 2014 (doc. 28-9) and

---

[3] The Libertarian Party cites this evidence without citation to a specific page. (Doc. 38 at 12, 20-22). The Court has considered the documents, even though its Uniform Scheduling Order requires page-specific citations (doc. 14 at 2), but has not cited specific pages as none were cited to the Court.

the Constitution Party which qualified a candidate for the United States House of Representatives and one for the Alabama House in 2010 (doc. 28-8).

In addition to political parties which satisfy the ballot access requirements, the Alabama Administrative Office of Courts, chiefs of elections of other states, as well as others, are provided free computerized lists.  (Doc. 28-3 at 4-5).

When requests for a voter registration list are made to the online portal of the Secretary's office, the lists are automatically generated, but the online portal is not designed to provide free lists, so requests for free copies of voter registration lists must be processed by Clay Helms ("Helms"), Deputy Chief of Staff and Director of Elections for the Secretary of State of Alabama, or an employee in the Secretary of State's office. (Doc. 28-3 ¶17). Helms states in a declaration that if voter registration lists were provided to more entities for free, it could become difficult for the Secretary of State's office to keep up with demand and to perform other elections responsibilities. (Doc. 28-3  ¶21).

The Libertarian Party states that it is undisputed that the lists are kept electronically and that a data file is sent to the Electronic Registration Information Center on a monthly basis. (Doc. 28-2 at 149).

## IV.   DISCUSSION

The Libertarian Party seeks a declaratory judgment and injunctive relief for a claimed violation of its First and Fourteenth Amendment rights.  It is the Libertarian Party's position that Alabama law, which only allows political entities to receive the statewide voter registration list without charge if they qualify for ballot access, violates its constitutional rights.  In moving for summary judgment, the Secretary maintains that the

6

Alabama law at issue is constitutional because the burden on the Libertarian Party's rights is minimal and the State's interests are sufficiently strong to justify the burden imposed. (Doc. 30 at 41).  In resolving the pending motion for summary judgment, this Court turns first to the analytical test which applies to the constitutional challenge and then the analysis under that test.

### A.  Test for the First and Fourteenth Amendment Challenges

The parties both take the position (doc. 30 at 16 & doc. 38 at 32) that even though this case does not present a challenge to a ballot access law, in evaluating the constitutionality of the challenged law, the Court should apply the *Anderson-Burdick* test generally applied in ballot access cases. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  This Court agrees. *See Libertarian Party of Alabama v. Merrill*, 2019 WL 4072355, at *2 (M.D. Ala. 2019) (denying motion to dismiss); *see also Fusaro v. Cogan,* 930 F.3d 241, 257 (4th Cir. 2019)(*Fusaro I*)(applying *Anderson-Burdick* to a First Amendment challenge to denial of access to a voter registration list).

Pursuant to the *Anderson-Burdick* test, courts "weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to the plaintiffs' rights."  *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019).  Regulations that impose "severe burdens" on a plaintiff's rights "must be narrowly tailored and advance a compelling state interest."  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358

7

(1997).  Regulations that impose lesser burdens trigger "less exacting review" and a state's "important regulatory interests" will usually be enough to justify "reasonable, nondiscriminatory restrictions." *Burdick*, 504 U.S. at 434.   The Supreme Court has explained that "no bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons*, 520 U.S. at 359; *see also Storer v. Brown*, 415 U.S. 724, 730 (1974) ("no litmus-paper test . . . separate[es] those restrictions that are valid from those that are invidious . . .   The rule is not self-executing and is no substitute for the hard judgments that must be made").   The more a challenged law burdens a right, the stricter the scrutiny applied to that law.  *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1319.

Under *Anderson-Burdick*, therefore, a court must (1) consider the character and magnitude of the injury to First and Fourteenth Amendment rights the plaintiff identifies, (2) identify and evaluate the precise interests put forward by the State as justifications for the burden on the plaintiff's rights, and (3) weigh all of these factors and decide whether the challenged provision is unconstitutional.  *Cowen v. Buckley,* 960 F.3d 1339, 1342 (11th Cir. 2020) (quotations and citations omitted).   In its analysis, a court must both "determine the legitimacy and strength of each of [the State's] interests" and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

## B.  Application of *Anderson-Burdick* Test

### 1.  The Character and Magnitude of the Injury to First and Fourteenth Amendment Rights

The Libertarian Party argues that the Secretary's actions in this case constitute a severe burden on First and Fourteenth Amendment rights because the requirement of ballot access for a free voter registration list discriminates against minor political parties and, therefore, is outside of the realm of regulations that might justify lessened scrutiny.  In so arguing, the Libertarian Party relies on multiple cases from outside of this circuit.  None of those cases are binding on this Court.[4]  This Court also does not find the cases persuasive on the issue of the magnitude of the burden placed on the plaintiffs' rights because the statutes at issue in those cases are significantly distinguishable from the statute challenged in this case.[5]

For example, in *Libertarian Party of Indiana v. Marion Cty. Bd. of Voter Registration*, 778 F. Supp. 1458, 1459 (S.D. Ind. 1991), the court found unconstitutional a voter registration list statute which provided that a "copy of the list shall be furnished to each of the county chairmen of the major political parties of the county as soon as the lists are prepared," and the major political parties were defined as the Democratic and Republican parties.  Similarly, in a case challenging a Michigan law, the unconstitutional

---

[4] One of the cases relied on is a three-judge court case affirmed by the United States Supreme Court, but the Supreme Court's decision is a summary affirmance. *See Socialist Workers Party v. Rockefeller*, 314 F. Supp. 984, 995–96 (S.D. N.Y. 1970), *aff'd*, 400 U.S. 806 (1970); *see also Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182 (1979)(stating "the precedential effect of a summary affirmance can extend no farther than 'the precise issues presented and necessarily decided by those actions.'").

[5] The similarity of statute is also an important consideration because a "court is no more free to impose the legislative judgments of other states on a sister state than it is free to substitute its own judgment for that of the state legislature." *Libertarian Party of Fla. v. State of Fla.*, 710 F.2d 790, 794 (11th Cir. 1983).

statute provided only "participating parties" with party preference information, and the state used a measurement that is stricter than Alabama's statute in defining "participating parties." *See Green Party of Mich. v. Land*, 541 F. Supp. 2d 912, 914 (E.D. Mich. 2008)("participating parties" were only those receiving 20% of the presidential vote which no party other than the Democratic and Republican parties had achieved since 1912).  In *Socialist Workers Party*, the court found a state statute unconstitutional which denied minor parties access to voter registration lists, but in doing so, pointed out that "plaintiffs have acknowledged that these lists should not be furnished indiscriminately at government expense to anyone requesting them. What they seek bestowed upon any party which complies with State requirements for placing its candidates before the electorate, is the same benefit granted to major political parties of not having to purchase such lists at considerable expense." 314 F. Supp. 984, 996.

Under Alabama law, a political party which qualifies for ballot access is entitled to a free copy of the voter registration list.  ALA. CODE § 17-4-33(10).  Therefore, any party which complies with State requirements for placing its candidates before the electorate is given the same benefit of not having to purchase the voter registration list.  Consequently, the cases from other jurisdictions cited by the Libertarian Party do not establish that the magnitude of the burden placed by the Alabama statute is severe.

Cases binding on this Court have identified a "severe" burden as an "insurmountable" one where the state operates to "freeze the status quo" by completely preventing minor party access to the ballot.  *See Jenness v. Fortson*, 403 U.S. 431, 438

(1971); *see also New All. Party of Alabama v. Hand*, 933 F.2d 1568, 1576 (11th Cir. 1991)(characterizing a severe burden as "insurmountable").

Although the Libertarian Party characterizes the Alabama statute as discriminating between major and minor political parties, the statute does not expressly differentiate among minor and major political groups, but requires ballot access of any party to receive the voter registration list without charge.   ALA. CODE § 17-4-33(10). Requiring minor party candidates to obtain sufficient numbers for ballot access has been held by the Eleventh Circuit to be a non-discriminatory restriction.  *See Swanson v. Worley*, 490 F.3d 894, 904 (11th Cir. 2007)(holding that "Alabama's three-percent signature requirement for ballot access is a reasonable, nondiscriminatory restriction that imposes a minimal burden on plaintiffs' rights.").   Therefore, this Court concludes that the Alabama statute which allows for voter registration lists to be provided without charge to parties which achieve ballot access and does not completely prevent minor party access is not "severe."  *See Jenness*, 403 U.S. at 438.

Further consideration of the magnitude of the burden on the Libertarian Party's rights under binding caselaw is not straightforward because the rule at issue is a waiver of fee requirement for a voter registration list, not a ballot access requirement.  While the Eleventh Circuit does not appear to have addressed a challenge to a denial of access to free registration lists, it has addressed a denial of a waiver of the fee for signature verification needed to gain ballot access.  *See Fulani v. Krivanek*, 973 F.2d 1539 (11th Cir. 1992).

The state statute at issue in *Fulani* required political candidates to pay supervisors of elections 10 cents per signature to verify the validity of signatures which were needed

to gain access to the ballot. *Id.* at 1540. That aspect of the rule was not challenged in *Fulani*, and in fact had been determined by the Eleventh Circuit in an earlier case to be constitutional. *See Libertarian Party of Fla. v. State of Fla.*, 710 F.2d 790, 794-95 (11th Cir. 1983)(stating that the plaintiffs had cited no cases holding that states must provide free access to the ballot in all circumstances and noted that "minor parties must incur some expenses in accumulating the necessary signatures to qualify for the ballot does not constitute an equal protection violation."); *see also Indep. Party of Fla. v. Sec'y, State of Fla.*, 2020 WL 4435080, at \*4 (11th Cir. 2020). At issue in *Fulani* was a statutory exemption from the fee requirement that was expressly denied to a "minor party." 973 F.2d at 1545. *Fulani* held that the statute pursuant to which minor parties were expressly prohibited from receiving an exemption from the costs imposed a "significant" burden. *Id.* at 1547. The Alabama statute, by contrast, allows any party to avoid the fee for the voter registration list if it achieves ballot access. ALA. CODE § 17-4-33 (10). The magnitude of the burden on the plaintiff's rights in *Fulani*, therefore, was greater than that imposed in this case.

In its analysis, the *Fulani* court rejected an argument that is similar to one raised here by the Secretary to demonstrate that the burden on the Libertarian Party is minimal. Specifically, the court rejected an argument that the possibility of a reduction of the verification expense under an alternative method of verification meant that the burden on the plaintiff was not great. *Id.* at 1545. The court reasoned that the very existence of the exemption from the fee was an acknowledgement that the remaining expense under the alternative method was still high. *Id.* Here, the Secretary has argued that although the cost

of the statewide voter list is approximately $36,000, the Libertarian Party's burden is not severe because the party is not required to purchase the entire statewide voter registration list.  The Secretary points to evidence, for example, that Frank Dillman, a Libertarian Party candidate for the Macon County Commission, District 4, who achieved ballot access in 2018, would only have to pay $178.02 for the Macon County registered voter list in 2020. (Doc. 28-3 at ¶32, 39).  The reduced costs pointed to by the Secretary would not reduce the cost for the statewide list, however, and that cost still remains high. *See Fulani*, 973 F.2d at 1545.  Furthermore, because limiting the cost inquiry to local races ignores the cost of the statewide list, the Court finds that this argument by the Secretary does not bear on the magnitude of the injury to First and Fourteenth Amendment rights the plaintiff seeks to vindicate.  *See Cowen,* 960 F.3d at 1342.

Of great significance to determining the magnitude of the burden on the Libertarian Party's rights in this case, however, is the Libertarian Party's ability to achieve ballot access.  It is undisputed that the Libertarian Party achieved statewide ballot access in 2000.[6] The Eleventh Circuit has concluded in ballot access cases that a party's ability to meet a ballot access rule demonstrates that the state's "requirement does not hinder diligent independent and minor party candidates." *Swanson*, 490 F.3d at 905 (11th Cir. 2007); *see also Libertarian Party of Fla*., 710 F.2d at 794 (stating that the fact that a minor party qualified its slate of candidates for the ballot shows that that the state law did not "freeze

---

[6] The Libertarian Party also offers evidence through William Redpath that another minor party achieved ballot access after the Libertarian Party did, but did not put a candidate on the ballot. (Doc. 38-5 at 3).

13

the status quo").  The achievement of ballot access demonstrates that diligent minor parties can obtain ballot access and, therefore, qualify for free voter registration lists. *Swanson*, 490 F.3d at 905.

Because the Alabama statute does not prohibit minor parties from receiving the benefit of a free voter registration list if they achieve ballot access, and because the Libertarian Party has achieved statewide ballot access previously, the magnitude of the burden under Alabama law, while not minimal, is not severe or significant, and strict scrutiny does not apply. *See Stein v. Ala. Sec'y of State,* 774 F.3d 689, 700 (11th Cir. 2014)(stating "[b]ecause Plaintiffs have not established a 'severe' burden on any of their constitutional rights, Alabama need only show that its deadline for ballot-access petitions 'rationally serves important state interests.'").

    2.   Identification and Evaluation of the Precise Interests Put Forward by the Secretary

The Secretary has put forward interests as justifications for the burden imposed by the Alabama rule.  This Court must examine whether the requirement of ballot access for a political party to be excused from paying the fee for a voter registration list rationally serves important state interests.  *Stein*, 774 F.3d at 700.  *Fulani* instructs that a statute regarding a waiver of a fee for information should be analyzed in the same way that a ballot access requirement is analyzed; namely, the burden on constitutional rights imposed by denial of a fee waiver must be justified by a sufficient State interest in the fee waiver. 973 F.3d at 1545-47.

In examining the State's proffered interests, the Court notes that the information at issue in this case is a government record which this Court is persuaded generally requires a degree of deference to the State's decisions regarding dissemination of that information. *See Fusaro I*, 930 F.3d at 252 (noting that because a voter registration list is a government record, "regulations on its distribution reflect policy judgments to which courts must ordinarily defer." ).

The Secretary points to several state interests in imposing reasonable restrictions on subsidized access to the voter registration list.  The Secretary states that during discovery in this case he identified lengthy state interests in controlling the registration list which included obligations under state law to provide the lists to entities such as local election officials, but that in addition to those interests, the State has interests in drawing the line for subsidized access to the voter registration lists at political parties that have achieved ballot access.  It is the articulation of the latter group of interests, that is, those tied to ballot access as a requirement for political parties to receive a free list, which are significant under *Fulani*.

The Libertarian Party argues, however, that under any standard there is no constitutionally cognizable rational basis for the waiver-of-payment rule.  The Libertarian Party argues that the interests the Secretary has identified in his motion for summary judgment are newly articulated solely for purposes of the motion and that the burden is on the Secretary to prove that the source of those interests. (Doc. 38 at 38).[7]

_____

[7] The Libertarian Party points out that Helms provided a declaration in support of the motion for summary judgment that points to interests not pointed to in his declaration provided with the

The State's reasons for a rule do not have to be empirically proven. *See Timmons*, 520 U.S. at 364 (stating "[n]or do we require elaborate, empirical verification of the weightiness of the State's asserted justifications."). A court, however, cannot simply apply a "litmus-paper test," and evidence may be needed to consider the extent to which proffered interests make it necessary to burden the plaintiff's rights. *Storer*, 415 U.S. at 730. But, there is no requirement that the State prove its reliance on the reasons pointed to by the State. *See Democratic Exec. Comm. of Fla.*, 915 F.3d at 1321 (examining "identified interests" to determine whether they justify the burden on the plaintiff's rights).

The interests the Secretary points to in drawing the line at ballot access for free voter registration lists include a proprietary interest in receiving compensation for taxpayers, distinguishing parties with a modicum of support before turning over propriety information, administrative ease of determining which groups are entitled to the list, maintaining stability of the political system by only providing lists to parties with support in the electorate, not subsidizing entities that consider themselves to be political parties but are more like interest groups, limiting demands on the Elections Divisions staff, increasing the number of entitles required to pay for proprietary information, not subsidizing groups engaged in political satire, and not facilitating fraud. (Doc. 30 at 29-41).[8] This Court will

---

motion to dismiss. The Libertarian Party does not, however, move to exclude this evidence on any basis. Helms' declarations are consistent as to the administrative interests identified in both. *Compare* (doc. 5-1 ¶¶34,35) & (doc. 28-3 ¶21). Therefore, the Court finds it appropriate to consider Helms' declaration offered in support of summary judgment.

[8] As to the proprietary interest in receiving compensation for taxpayers and the related interest of increasing the number of entities required to pay for proprietary information, the Court concludes that it has not been shown why providing lists for free to those with ballot access is necessary to achieve those interests. *Fulani*. 973 F.2d at 1547.

examine these interests in two major categories: modicum of support in the public and administrative interests.[9]   *See Democratic Exec. Comm. of Fla*., 915 F.3d at 1321 (identifying general categories of state interests).

a.   Modicum of Support in the Public

The Secretary has pointed to an interest in supporting parties with a modicum of support in the public through ballot access, arguing that the State has an interest in providing the lists to parties which achieve ballot access because the State has an interest in supporting the political parties which perform important public functions of nominating candidates, contesting elections, and putting forward a platform of proposed policies for consideration by voters. (Doc. 28-1 at 6).  The Secretary has presented expert evidence regarding political groups which have held meetings and sponsored candidates in state elections to show that there are numerous groups which consider themselves to be political entities.  (Doc. 28-1 at 16-17).  The Secretary explains that the line-drawing at ballot access does not completely insulate major parties, but allows taxpayer funds to pay for access to the voter registration list only if a party has shown sufficient support in the public.

The Libertarian Party does not appear to argue that voter registration lists must be given without charge to every entity requesting a list. (Doc. 38 at 27 & n.11) (stating that

---

[9] Stabilizing the political system, not subsidizing interest groups, preventing fraud, and not subsidizing satire are interests subsumed in the interest in supporting parties with a modicum of support in the public to the extent that the interest draws a distinction between political entities and other groups. (Doc. 28-2 at 145) (stating "[d]rawing a line at ballot access distinguishes political parties with a significant modicum of support among the electorate and all other entities— whether it be an organization that claims to be a political party but lacks ballot access or another politically driven organization or any other  kind  of  enterprise—before  turning  over  valuable State  resources in  the form of proprietary information without compensation for the taxpayers.").

17

the Libertarian Party "is not claiming every requestor must get a list for free - that might be fair; but it is beyond this case."). The Libertarian Party instead argues that even if there were evidence that multiple minor parties wanted copies of the voter registration lists, none of those parties are as established as the Libertarian Party so as to require any meaningful line drawing. (Doc. 38 at 38).

The Court finds no authority for the proposition that a state is required to give, at taxpayers' expense, a voter registration list to every entity that calls itself a political party. Instead, even in the cases relied on by the Libertarian Party to support its claims, the courts have acknowledged that states are allowed to draw a line to determine which entities receive a free list. *See Socialist Workers Party*, 314 F. Supp. at 996 (noting that "plaintiffs have acknowledged that these lists should not be furnished indiscriminately at government expense to anyone requesting them); *Libertarian Party of Indiana*, 778 F. Supp. at 1464 (stating "the state has an interest in not being required to distribute Registration Lists to everyone who might request them.").

Line-drawing for access to voter registration lists by using the ballot access rule is like the line-drawing the State engages in by setting a deadline for submitting the necessary signatures or in setting a percentage of votes for ballot access by petition. "Obviously any percentage or numerical requirement is necessarily arbitrary." *Libertarian Party of Fla.*, 710 F.2d at 793 (quotation and citation omitted). The issue is not the fact that a line has been drawn, but whether the State can show that its line-drawing adequately serves the State's interest. *Id.* (stating that "the test is whether the legislative requirement is a rational way to meet this compelling state interest."); *see also Stein,* 774 F.3d at 700 (stating that a

18

filing "deadline must rationally serves its administrative interests."). The test is one of reasonableness. *Libertarian Party of Fla.*, 710 F.2d at 793. Consequently, reasonable ballot access rules requiring a certain number of signatures by a certain date have been found constitutional. *See Stein,* 774 F.3d at 701.

One of the interests which ballot access rules serve is an interest in only putting parties on the ballot which have a modicum of support in the public. *Id.* at 700 (stating "it is beyond dispute that Alabama has an important interest in requiring minor parties to demonstrate some 'modicum of support' before they are entitled to a spot on the ballot.")(citation omitted). Modicum of support in the public, in the context of ballot access, has been determined to be an important interest because the state can minimize confusion, deception, and frustration of the democratic process by limiting the people listed on a ballot to those with public support. *Swanson*, 490 F.3d at 903. The same reasoning underlying the recognition of modicum of support in the public as an interest supporting ballot access rules also applies to the rule allowing for free registration lists upon a showing of a modicum of support through ballot access.[10]

Upon remand from the Fourth Circuit, the district court in *Fusaro v. Howard*, 2020 WL 3971767, at *20 (D. Md. 2020)(*Fusaro II*), in a case discussed in supplemental briefing in this case and persuasive in its analysis of the State's interest, examined the State's articulated interest in a statute which limited access to voter registration lists to entities

---

[10] The line drawn at ballot access to show a modicum of support distinguishes this case from the interest alluded to in *Fulani*, where the court rejected an argument that the ability to pay money is an adequate measure of support. 973 F.2d at 1547.

using the lists for electoral purposes. The court concluded that a "modest burden" advanced the interest the State had identified in promoting voter registration while also minimizing abuse of the list. *Id.*

In this case, the Secretary's interest in supporting entities with a modicum of support in the public is an important interest like the interest recognized in *Fusaro II*. The State of Alabama has determined that important interests are served by providing voter registration lists without charge to political entities, (doc. 28-2 at 144), but a line has been drawn at political entities which achieve ballot access. Alabama's interests in supporting political entities which perform important public functions, in stabilizing the political system, in limiting access to the list by interest groups, and preventing access by groups intent on fraud, (doc. 28-2 at 144-45), are important interests rationally served by limiting entities which receive voters' personal information without charge by drawing a line at entities with a modicum of support in the electorate. *Stein*, 774 F.3d at 700.

Additionally, the past success of the Libertarian Party in achieving ballot access, which has been a factor in the Eleventh Circuit's approval of the rules regarding ballot access in Alabama, *see Swanson*, 490 F.3d at 905, also demonstrates that the law providing free access to the voter registration lists by using the same ballot access rule serves recognized, important state interests in a reasonable way.

The Court notes that the Libertarian Party has argued that the ballot access standard is unfair because the voter registration lists are needed to obtain the signatures required for ballot access in the first place. The fact that the Libertarian Party has achieved statewide ballot access in the past, however, undermines that argument. Furthermore, the fact that

the Libertarian Party may have a more difficult time obtaining ballot access than the Democratic or Republican Party is not a basis for rejecting the State's rule as unreasonable because, as the Supreme Court has explained, the states have "a strong interest in the stability of their political systems" which they can choose to advance "through election regulations that may, in practice, favor the traditional two-party system," as long as they do not "completely insulate the two-party system from minor parties' or independent candidates' competition and influence." *Timmons*, 520 U.S. at 367.

### b. Administrative Interests

The Secretary states that determining which parties can have access to a free voter registration list by drawing a line at ballot access is administratively useful both because the line is objective and does not require additional investigation and also because it limits the demands on elections staff.  The Secretary explains that ballot access is something state and county election officials already determine in order to print ballots, so drawing the line there for free registration lists requires no new investigation into the legitimacy of an organization requesting a list.  The Secretary points to evidence that some smaller parties, such as the Constitution Party, have qualified for ballot access for particular races (doc. 28-8), and argues that it makes sense to draw the line for free voter registration lists to be provided to those parties in those races.

The Secretary also provides evidence that requests for voter registration lists at no charge cannot be processed through the Secretary's on-line portal, but must be processed by Helms, Deputy Chief of Staff and Director of Elections, or another employee in the Secretary's office. (Doc. 28-3 ¶17).  According to Helms, if the voter registration list were

21

provided to more entities for free, it could become difficult for the Elections Division of the Secretary's office to keep up with that demand as well as meet other elections responsibilities. (Doc. 28-3 ¶21).

The Libertarian Party maintains that any claim of hardship or undue burden is undercut by the fact that the Secretary provides a free statewide voter registration list each month through an electronic format so that the only extra time required to provide the same list to the Libertarian Party would be the amount of time required to send an additional e-mail.

The administrative burden identified by the Secretary is in determining to whom the information should be provided without charge.  The evidence pointed to demonstrates that relying on ballot access rules to make that determination would provide an objective, defined standard that has been held to be constitutional against other challenges. *See Swanson*, 490 F.3d at 905. Drawing the line at ballot access also would not require substantial additional time on the part of elections officials to determine which entities are entitled to the list without charge, which advances a regulatory interest.  *See, e.g., Ohio Democratic Party v. Husted*, 834 F.3d 620, 635 (6th Cir. 2016)(identifying as important regulatory interests "easing administrative burdens on boards of elections."). Therefore, because Alabama already draws a line with its ballot access rules in determining which parties are placed on the ballot, relying on that same line in determining which parties receive a free voter registration list rationally serves administrative interests.

### 3.   Weighing the Interests

After considering the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Libertarian Party seeks to vindicate, and the legitimacy and strength of the State's interests and the extent to which those interests make it necessary to burden the plaintiff's rights, this Court must weigh those factors to determine whether the challenged rule is constitutional. *Anderson*, 460 U.S. at 789.

In this case, the burden on Libertarian Party's Fourteenth and First Amendment rights imposed by the ballot access requirement for obtaining a free voter registration list is not minimal, but also is neither severe nor significant.  Weighing that burden against the State's important interest in providing the list to political entities with a modicum of support in the public and its interest in administrative ease, this Court finds that the requirement that political entities be provided the voter registration list without charge only if they qualify for ballot access under the State's ballot access rules rationally serves important State interests and is not unconstitutionally burdensome.   The motion for summary judgment, therefore, is due to be GRANTED.

## V.   CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.   The Motion for Summary Judgment (doc. 29) is GRANTED and final judgment will be entered in favor of the Defendant and against the Plaintiff.

2.   The objections to the expert reports of William Redpath and Richard Winger (doc. 18) are OVERRULED as moot.

3.   The *Daubert* Motion to Exclude the Testimony of William Redpath (doc. 31), and the *Daubert* Motion to Exclude the Testimony of Richard Winger (doc. 32) are DENIED as moot.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 5th day of August, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE